May it please the court. My name is Heather Quick and I represent the defendant Richard Parker. Mr. Parker was sentenced to mandatory life imprisonment after a jury trial on one count of distribution resulting in death and one count of possession with intent to distribute. On count one, the life sentence was mandated both by the resulting in death finding and the two 851s. On count two, the life sentence was mandated by the two 851s only. Today, I will begin by discussing the causing death finding, then why the mandatory life is not supported by his prior convictions alone, and then I will discuss the motion to suppress. First, insufficient evidence exists to support the causing death finding as to count one. The government alleged, and the evidence established, that the victim here had ingested both cocaine and heroin. Here, the jury found that Mr. Parker only distributed the heroin. The government failed to prove in this case that the heroin was either a but-for or independently sufficient cause of the victim's death. To briefly recap, but-for means the government had to prove that, but for EM's use of heroin, she would have survived. Independently sufficient cause means the government had to prove that the heroin was sufficient alone to cause her death. Neither were proven here. The expert testimony's official conclusion was that the victim died of multidrug toxicity, a combination of both cocaine, heroin, and alcohol. The expert was forthcoming in that he could not testify that one drug alone was the cause of her death. He could not answer whether she would have died without the heroin use, that is, whether the cocaine and alcohol was enough to cause her death. The only close call of testimony from the expert was the potentially fatal testimony. But looking at that testimony in context, it is a virtually meaningless phrase when it comes to barrage causation. The expert said the presence of cocaine was at a potentially fatal level, but he explained that it was impossible whether to answer whether the cocaine was a but-for cause of her death. Why isn't that sufficient for the independently sufficient method of proving the case here? Because potentially fatal, when you looked into what he actually meant by that, did not mean that he was testifying that heroin alone was enough to cause her death. But there was enough. I think he testified that the level of heroin in his blood was at a lethal level. I'm not quoting exactly, but isn't that sufficient for the jury to then conclude, along with the other evidence in the case, not on the but-for prong, but the other prong? No, Your Honor. Your Honor is correct in that there was testimony of this is very dangerous, it's at a dangerous level, it's at a potentially fatal level. But when you get into the nitty-gritty of what the expert actually meant by that, he wasn't saying, I can say that the use of the heroin alone was sufficient to cause her death. He could not say that, which is why ultimately his final conclusion was that it was multidrug toxicity. And as far as the circumstances and the other evidence of the victim's death here, which the government heavily relies upon, essentially that this was the last drug that the victim had used, so this was the cause for death, that's insufficient under barrage. If something is to be the straw that broke the camel's back, to do that, to have that be sufficient beyond a reasonable doubt, the government has to also prove that the other drugs would not have caused her death. And the expert could not testify to that here. As I read seals, it's a jury question for but-for. But they have to put forward sufficient evidence to let the jury reach that conclusion. Yes, but it doesn't have to be sufficient evidence of independently sufficient. That's correct. But-for causation could as well. If it's a mixture issue. Correct. It could be but-for as well. It seems to me the evidence here is at least as strong as in seals. I would disagree, Your Honor. In seals, there the expert testimony was much stronger than the expert testimony was here. There, the expert in seals was able to testify that to a medical certainty that the drug that the defendant there had distributed was the most likely cause of the overdose. Whereas here, we don't have that level of expert testimony. But the expert isn't an expert on legal issues. That's correct. We have the two other people there saying they saw the victim consume heroin and only defendant distributed it. And I think they said that during that immediate time, preceding time period, she didn't consume cocaine. So as in seals, it was unclear when, if the death was caused by a mixture, when the rest of the mixture was consumed. Because the expert said I can't define but-for does not take the issue away from the jury, in my view. Or what case would say it does? So if the expert can't establish, when you have a complex issue such as this, that is outside the knowledge of a juror, when you have multiple drugs that are being ingested, whether one drug alone, which is what is required under Brook. That's what jurors do. Right, but when it's a question. When they're properly instructed. Correct. Does the evidence show that the heroin was a but-for? Without the heroin consumption, the victim wouldn't have died, even though the heroin by itself might not have killed her. That's the jury issue, isn't it, in seals? Well, that's the jury issue, yes, in these multi-drug toxicity questions. That's the question. Whether the drug that the- Your argument is that the expert being unable to give a legal opinion ruined the government's case. I just don't think you have authority for that. I think, especially just in the context of expert testimony in general, it's necessary when something is outside the purview of just a normal lay juror. Here, a normal lay juror isn't going to understand how drugs interact within the body. What's your authority for that? In case law. I mean, in criminal case law. Not in criminal case law, Your Honor. That's just the general principle. Well, I know the general principle, but it seems to me it doesn't apply to this kind of criminal law issue. Your Honor, to find that- This is not an issue that requires an expert opinion on the question of but-for causation. It may well require an expert's help in setting the table for the jury. Your Honor, our position is that if the expert can't provide that testimony to the jury, and all the government is relying upon is this timing, well, it's the last drug that the victim had used before death, so it must establish it. That takes us back to what Barrage said is improper. If you're going to have this, well, we don't have expert testimony that's clear, and there's multidrug toxicity, and then the victim dies or overdoses soon after that last drug is induced, Barrage said the only way that is enough is if the government can establish that the victim would have survived and would not have died without the other drug use. But Barrage is only on the but-for causation issue, right? I mean, independently sufficient is outside the purview of that case. I believe so, Your Honor. So why isn't there an independently sufficient basis when the medical examiner says there's potentially lethal level of heroin? You've got the admission from the defendant in the jailhouse telephone call that she took the heroin, and I forget the exact term again, but basically she was out. You've got the 6-MAM in her blood, which indicates the heroin use was very close to death, as I understand the testimony. Why isn't that enough to send to the jury and say, look, setting aside but-for but independently sufficient, there's enough here for the jury to conclude that it was the heroin that killed her? Well, turning to just the presence of the 6-MAM, again, that's only consistent with that's the last drug she used before she died. It's not sufficient to assume. But it metabolizes very quickly, I think was the testimony. So the inference from it is she died very quickly after ingesting the heroin, I think. But that inference does not get the jury to the question of whether would the cocaine have been enough itself. But that's but-for, right? Was there enough heroin to kill her? And that's my question. Isn't there enough there to send that to the jury? No, Your Honor. Again, it still doesn't-it leaves too many things unanswered to say it's the last thing she used, so that must have been what caused her death. And that's my understanding of independently sufficient cause. Because she used it, she would have died. It could have been a situation where if that was the only drug the victim had used in that day and she used it, she would have survived. In that case-I'm sorry-if that was the only drug she used and she survived, that establishes it's not an independently sufficient cause. It takes into account the combination of the other drugs that were used that day. And turning again to the expert's testimony, he talked about these phrases like potentially lethal, dangerous. But then at the same breath, the expert testified, well, all drugs are dangerous. Well, I can't say that there's any safe level of drugs. So it's not really meaningful and concrete testimony for a jury to find beyond a reasonable doubt that the heroin use was either an independently sufficient cause or a but-for cause of the victim's death. If this Court reverses, as it should, the jury's finding that the heroin resulted in the victim's death, this Court must reverse and remand for a full resentencing on both counts of conviction. Reversing on even just the sufficiency of the causing death finding would require to go back and entering of an amended judgment. This would mean that the District Court is imposing the sentence. In those circumstances, it would be clear that the statutory scheme has changed and the Fair Sentencing Act changes to the- So I was unable to find any kind of direct case on point. We've had recent cases saying, no, it wasn't in other contexts. But what I'm relying on here is just the plain language of the Fair Sentencing Act. If a sentence has not yet been imposed, that's what I'm relying on for the requirement of full resentencing on both counts. Next, the mandatory life finding cannot be supported by Mr. Parker's prior drug convictions alone. And there's been some changes in this Circuit's case law, so I want to clarify right off the bat. Bolin, this Court, rejected the Iowa aiding and abetting overbroad. So for Mr. Parker to avoid the mandatory life finding, this Court must reverse first on the causing death and find at minimum only one prior felony offense, which he would have under the Circuit's case law as it is today. I know there is the pending before the Supreme Court, the Shuler case. I'm not sure if that will impact Bolin or what it will decide, but that is out there. But at most, Mr. Parker only has one prior felony drug offense. First, because his two Iowa convictions were part of a single criminal episode and his two Illinois convictions do not qualify as prior felony drug offenses. What's the basis for saying that the statute requires separate episodes? I didn't see any text in the statute like in the ACCA that calls for a finding of different occasions. So it's not in the text. I'm just relying on the Circuit's prior case law. Have we ever actually held that somebody could not be sentenced because the government failed to prove separate episodes? Whether this Court has actually found that two prior convictions are not separate criminal episodes? I grant you there's some language in some of the cases referring to that as a possible requirement. But I didn't find any where the Court had actually held that the failure to show separate episodes required reversal. Not off the top of my head, Your Honor, no. But our position is that... So what is, as a matter of first principles, what is the basis for that requirement if it's not in the statutory text? The basis, I think, is similar to the basis in the ACCA context. Just the idea of if it truly is one... The ACCA has text that says they must be on separate occasions. I am not sure, Your Honor. I would just understand... Go ahead. Finish your answer when you say it's similar to the ACCA context. Granted, it doesn't include the language. That's correct. But this Court has kind of treated it the same as far as whether we count these as two convictions or as one conviction. I grant you the cases talk like that, but query why if it's not in the text. Our position is that it should only count as one. And that in doing so, this Court is limited to the Shepard documents to determine if they were... The two counts were part of a single criminal episode. This is pulling from principles similar to, on occasions different from, one another. Under the categorical approach, every circuit to address this has determined that courts should be limited to Shepard documents only for the similar concerns of whether we're finding something as a prior qualifying conviction or whether determining if things are part of a single criminal episode to limit judicial fact-finding to increase the mandatory minimum sentence. Questions of things like times, dates, locations might not have been worth a defendant challenging when he or she was at state court because of those current concerns not relying on non-Shepard documents. Haven't we just rejected that argument? So in Holston, the Court had ruled that the Court wasn't limited to Shepard documents, but that opinion was vacated. There's prior cases where it seemed to indicate that the Court was limited to Shepard documents, but then in the Levering decision, there's a footnote indicating that it was undecided at this point, but acknowledging that every circuit to address it has found that in the ACCA context, at least, courts are limited to Shepard documents. In the multiple episode, on the multiple episode... No, that's on the occasion different from one another. I haven't found anything in this circuit about the question of single criminal episode, but it's our position that those should be interpreted similarly, and courts, when making that analysis, should be limited to the same documents because the concerns are the same. So on these two Iowa convictions, can we consider the complaint an affidavit? No, Your Honor. On the theory that, well, go ahead and tell me why not, then I might have a follow-up question. So our position is that the Court is limited to Shepard documents, and that this is not a proper Shepard document. In fact, it's the type of document that the Supreme Court was concerned about in Shepard itself. We have an affidavit from a police officer. It's signed by the detective indicating or just establishing probable cause. This is necessary in the state of Iowa. So it's not something that the defendant necessarily had to plead guilty to. These aren't facts that he had to admit to be convicted on both counts. And because of those concerns as established in Shepard, it shouldn't be relied upon as part of a single criminal episode inquiry. If there are no further immediate questions, I'd reserve the remainder of my time. Thank you. Mr. Chatham. Thank you, Your Honor. May it please the Court. Counsel. I want to touch first on this causation issue. I think the Court has honed in on the accurate part here. First, when we look at the but-for cause issue, the testimony in this case and the evidence in this case establishes a classic but-for cause. The testimony by the medical examiner in this case, Dr. Thompson, was basically setting the table. Dr. Thompson explained how both of these drugs work, well, all three of these drugs, that being cocaine, cocaethylene, and heroin, how they work in the body, the effects that they have. And that actually is the most critical portion of the testimony for the jury's ultimate finding. When we look at Dr. Thompson's testimony, he testified that cocaine can have an effect of increasing your blood pressure, increasing your heart rate, increasing the demand for oxygen in the body. He then testified that when heroin is introduced to a system like that, or into a person's system, that heroin causes a drop in oxygen levels. And so we have a situation here that the jury was permitted to find where EM, the victim in this case, used cocaine several hours prior to her use of heroin. So the physiological effects of that cocaine, per the expert testimony, were to increase the blood pressure, increase the demand for oxygen. And then we have heroin added into that scenario, into that system, and at that point EM dies very, very shortly thereafter. That is classic straw-that-broke-the-camel's-back evidence. And that's certainly permissible for the jury to make that finding that the heroin was a but-for cause. Now, the jury also could have found an independently sufficient cause here. I believe the transcript was at page 390, where Dr. Thompson was asked if the heroin was present at a potentially fatal level, and he had already testified that heroin is lethal at very small quantities. And so his answer to the question of whether heroin was present at a potentially fatal level, heroin, I think it was broken down as the six ma'am and morphine, which is what it would look like in the toxicology report. His answer was definitely yes. This is a sufficient amount of drugs to kill a person. And I think we also need to look at the fact that this is an inexperienced heroin user. The evidence was that she was not a heroin user. This is not-it appeared to be her very first time. And so when you add all- And where was that evidence? Was that trial testimony? I believe Ms. Ostrander and Mr. Richards both testified that she was not a drug user generally. So their-and the testimony-their testimony was more specifically focused on the cocaine because they-neither one of them testified to having seen the heroin use. The heroin use took place in the back bedroom while they were over in the living room. And so the other two witnesses at the scene did not testify that they knew that there was actually heroin present in the house at that time. It was only the defendant's statements to the police and then his later testimony that established that he was the one who had the heroin and that Ms. E.M. eventually used that heroin. And so this is, at base, as in seals, it is a factual question for the jury. There is more than enough evidence here that the heroin was the but-for cause of E.M.'s death and that the jury verdict should be affirmed. If there are no other questions on the causation issue, I will move on to the issues of the 851, which were discussed just briefly there. We would agree that the Bolin case here resolves the issue with respect to the Iowa, whether aiding and abetting is an appropriate alternative. And so that, as counsel has conceded, that gets one. That's one prior conviction for 851 purposes. If the court affirms on the death finding of the jury, then that is an affirmance for the mandatory life provision as well, because if the defendant has one prior felony drug conviction under 841b1c, then the defendant has a, and death results from the use of the substance distributed, it's a mandatory life under 841b1c. The only time where the court would need to look for a second felony drug conviction is if we are operating under the 860a, the school zone provision, because that's an alternate basis for finding a mandatory life in this case. If an individual under 860a, and then there's a reference under 841b1a to anyone who distributes a controlled substance in violation of 860a and has two prior felony drug convictions, that there's a mandatory life for that as well. So ultimately, we believe the evidence here and the district court's findings, supported by the evidence here, that the defendant has, in fact, four prior drug felonies. The Iowa priors are the two that were talked about here. And I recognize that we cited Holston, and as counsel noted, that opinion was vacated. But it was vacated on a different ground. So technically the opinion no longer exists, I understand that, but the persuasive force of it still stands. And Holston didn't stand alone. Holston was citing back to other cases that had stated the same principle, particularly Evans. And then there was a case that was cited in, I can't remember if it was Evans or Holston, that was called Davidson, 527 Fed 3rd 703 from 2008, where the court stated we may consider both the offenses of conviction and the underlying facts to determine whether the offenses were committed on different occasions. And so why aren't those cases all superseded and wrong in light of the more recent Supreme Court decisions? That's what all the other circuits have said. Which Supreme Court decisions are we talking about? De Camp, Mathis, all the ones about the categorical approach and the need under the Sixth Amendment to limit the fact-finding and sentencing. Well, those other opinions are wrong, first of all, because when we look at this particular issue, it's different than the issue that is concerned in the Shepard cases and De Camp's and all of those. We're looking at a timing issue. Those cases, their focus of those inquiries are the specific statute that was transversed. So the person has broken which version of that law. It's not the type of fact that is easily accessible to a Shepard inquiry, frankly, particularly for a case like this one. If we look at a case like this where an individual commits two crimes on the same day, hours apart, there's almost no likelihood that any charging document in state court or anywhere else is going to put the time stamp, the exact minute that the particular distribution occurred. And so it's not an element of the offense, and so it's not a type of thing that they would charge. Yeah, but the fact that it makes it harder to prove, I don't know if that's a reason to say Shepard doesn't apply. I mean, that was one of the government's arguments in Shepard itself, that it's hard for us to prove the necessary information if we can't use the police reports. The Supreme Court said no, that's not sufficient reason, particularly when you have these Sixth Amendment concerns. You're asking us to go out on a limb here against every other circuit. So I wanted to make sure I heard you out on it. Sure. I don't believe we're asking to go out on a limb here. I understand the other circuits have gone, in some ways they've indicated that it should be Shepard documents. But when we look at the fundamental inquiry of why we need to look at Shepard documents, it's so that we can determine which elements, which version of the statute or which particular statute was committed, the crime, what it was committed, so we can say, okay, it was this, A, B, or C, and this determines the penalties and this determines all the rest of that. It's a fundamentally different inquiry when we're talking about when it happened. Well, you better be careful. I mean, you've got some people who think we shouldn't even be allowing the judge to make this determination in sentencing, that it has to be a jury issue. And we've said so far that, no, it still comes under Almendarez-Torres, that you can use, you can make the decision in sentencing, but I don't know why we would say, but you can do additional judicial fact-finding that you can't do to find the convictions themselves, if that's the rationale why we allow the judge to do it. I guess I'm going to stand on the argument that I made, is that I believe that here, under this particular fact, is not one that lends itself to a Shepard-type analysis. So, in addition, there was a question, I believe, about whether the court can look at complaints generally under the Shepard analysis, and I think the case of Dittmer, U.S. v. Dittmer, from this circuit from, I believe, a year or two ago, would arguably eliminate that. So if we are in the Shepard document situation, Dittmer held that minutes of testimony attached to a trial information were not allowed to be considered as Shepard documents, so I would believe that a complaint affidavit, or an affidavit in support of a complaint would probably fall along a similar line. Additionally, counsel has made the argument about the Illinois priors, and I just wanted to mention in the briefing, we've talked about the fact that there's an argument that Illinois law was overbroad as to drug type, or that drug type is not an element of the offense, and that's just inconsistent, I think, with Illinois law, which the Hill case that we have cited states that drug weight is an element of the offense, and the argument is that drug weight is an element of the offense, but weight only applies to certain substances, so the weight and type of substance, those go hand in hand, and so it's not just 30 grams of drugs that cause you to get an increased sentence, it's 30 grams of a particular drug being cocaine, and so because that fact, the drug type and the drug weight, those going hand in hand can determine the sentence. Any time the court has to determine what the particular drug was and how much of it there was, that makes that an element, and so that renders the two Illinois convictions also divisible, and the documents that were submitted at the time of sentencing established that both of those offenses involved controlled substances, and so those Illinois offenses also count, which would make... But I thought the problem there was that controlled substance includes counterfeit substance. Exactly, and so counterfeit substance would be another option under the statute, so controlled substance versus counterfeit substance, if the jury has to find a particular type and quantity in order to get that, that means that that entire fact is an element that the jury ultimately has to find, so if they have to find that the offense involves, say, 30 grams of cocaine, that means that that finding of 30 grams of cocaine is an element to the offense, and so in a different case they would have to find is it a counterfeit substance or is it, I guess that would be how it would be submitted. What's your best Illinois case that says the counterfeit cocaine versus real cocaine is an element? I don't have a case on the counterfeit versus real cocaine. I'm extrapolating from the Hill case, which talks about drug weight being an element, and so the argument is that drug weight goes hand-in-hand with drug type, and so it's not 30 grams of cocaine versus 30 grams of a counterfeit substance. There's no enhancement for counterfeit substance, but that doesn't mean that the jury doesn't have to find if it's a counterfeit substance. The jury would be instructed, you know, you have to find that it's a counterfeit substance or find the actual drug type. Why would it go hand-in-hand if the rationale of the Hill case was that there's a sentence enhancement for additional quantities? Is that the idea? Yes. So that it has to be found? Yes. But if cocaine and counterfeit cocaine don't affect the penalty, then why would the rationale of Hill carry over? Well, cocaine goes hand-in-hand with the weight, so if the statute just said if you had 30 grams of a counterfeit substance or cocaine or methamphetamine or something else like that, then it would be across the board, and then the drug type or non-drug type when it comes to counterfeit substances wouldn't have any impact on it, and maybe it's just a matter of the quantity of whatever the substance was, be it counterfeit or controlled substance. But because the statutory penalties are tied to weights of particular drugs, any drug that is involved or any substance that is under the purview of that statute becomes an element that the jury would have to find. Is there a different penalty for 30 grams of cocaine or 30 grams of counterfeit cocaine? My understanding is that there are no quantities with respect to counterfeit substances. So if you think of it in the Controlled Substances Act under the federal law, B1C sort of gives you the baseline for most controlled substances or anything that doesn't have a quantity. But when you add, say, 100 grams of cocaine, then we're at a B1B quantity. So what's the answer to the question? As far as the whether it's... Is the penalty for 30 grams of cocaine the same as for 30 grams of counterfeit cocaine? No, I don't think it is. And I want to couch my answer in that I don't know if 30 grams is a specific statutory scheme there. But whatever the additional... It becomes, I think, a Class 4 felony if you... Excuse me, maybe not Class 4, but it's an increased penalty if you have a greater amount of a particular controlled substance like cocaine. And it's a lower penalty if you have a counterfeit substance or a lower quantity of, say, cocaine. So the answer to the question is yes, there is a difference in penalty when you have a greater amount of a particular controlled substance. And do you think this issue only comes up if the death finding is reversed? It comes up... Well, it would come up with respect to... Resulting in death finding? So it would come up with respect to the second count as well, I believe Count 4, because that was also a mandatory life because there was a... Regardless of the death finding? Yes, for the possession of intent. So we have to reach this either way, you're saying? For that count, yes. There has to be a determination of whether there were at least two prior controlled substance... Or, excuse me, prior felony drug offenses. And here we have the two from Iowa. We have the one... Well, and then the other two from Illinois that I've just discussed. Counsel did not reach the suppression issue, which means, of course, we take it on the briefs. And as thinking about the facts brought to mind a question that I really haven't thought about in Fourth Amendment context, particularly watching British criminal crime shows. Very often the police arrive at a party or a room full of people where there's an apparent homicide, and there are a lot more people than there are police. And so the officers say, you're all potentially material witnesses, and I need you to wait around until I've gotten your identification and taken a brief statement. And that sort of goes by passing. And that's kind of what happened here, although a lot fewer people, of course. But in that situation, if the people wait around for an hour and a half because there are so many of them, and one of the last people interviewed makes an incriminating statement or a statement that leads under Wong's son to the discovery of incriminating evidence, and he or she is indicted and charged, has the Fourth Amendment been violated by that hour and a half? I don't know of a case that's ever addressed that. It certainly doesn't fit the Terry rationale. On the other hand, it fits my notion of reasonable police procedure, at least if nobody stands up and says, my wife's about to have a baby, I've got to get out of here, or whatever. I need to leave. Are you aware of any authority on that kind of a question? I'm not aware of any authority, and I did actually go looking in preparation in this case. When we look at the facts of this particular case, though, beyond just a giant person at a party. No, this case, it's not a, my hypothetical is not on all fours. But if my hypothetical had an obvious answer in the case law, it would be relevant. Certainly, it would make the answer much clearer. But I think it's pretty clear on the basis of the facts here, as well. If there are no other questions, then I will cede the remainder of my time and ask the court to affirm the district court on all judgments. Very good. Thank you. It was quick for a vote. I do want to briefly discuss where the court left off on the denial of the motion to suppress. And that Mr. Parker was unlawfully seized. Well, you can't do it on rebuttal. You can address my question and his answer. But it's otherwise you're sandbagging, so to speak. Your Honor, our position is that no. The idea of if the law enforcement comes upon an emergency situation, and their desire is to say, well, we want to interview and figure out what was going on. That is insufficient to seize someone under the Fourth Amendment and then subject them to questioning later. I think that's a dangerous road to go down. But my hypothetical, of course, isn't a classic seizure. It's please wait. We need to get your identifications and interview a person who does not object to that. Then later, when prosecuted, it says, oh, wait a minute, I was unlawfully seized. Menace to me suggests that my question is, the answer is not obvious even if it's not been ruled on. So our position is that it would be a seizure. At the point, even if the officer's subjective intent is, I just want to figure out- Oh, it's easy to make the argument because it doesn't fit the tearing mold. Right, but any time an officer is telling someone, you need to stay here because I need to talk to you, if the other factors are indicative of a seizure, that would be a seizure in our position. Even if it's just a situation where we want to get people's information and they end up staying maybe longer than anyone would like, our position is that- Of course, then Mena was wrong, if you're right. Your argument is right, literally. Our position is that- So you're not in the way, and that was not a Fourth Amendment violation. Well, this is a different situation than- I know it is. So our position is it would be distinguishable from those circumstances. And I just wanted to briefly clarify on turning back to the Illinois convictions. While it might be an element and distinguish between like heroin and cocaine, there's no distinguishing between heroin analog or counterfeit or cocaine analog counterfeit. That is my recollection of the statute. So while there might be some differentiation between weight- Yeah, go ahead. But that's what I recall of the statute. Well, it does say, any person who violates this session with respect to the following amounts of controlled or counterfeit substances or controlled substance analogs is guilty of a felony and shall be sentenced to a term as provided in this subsection. But the government just stood up and said, counterfeit substances are like B1C, it's a default lower punishment. I don't recall that from the statute. I don't see it either. If there are no- If the government would know, I guess not. Maybe I'm missing it. Thank you. If there are no further questions, we would ask, based on the arguments today and the arguments in the brief, that this court reverse and vacate or alternatively reverse and remand for a new trial, and if not, reverse and remand for resentencing. Thank you. Thank you, counsel. The case is certainly brief. You were well prepared and the argument was very helpful. We'll take it under advisement.